```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW HAMPSHIRE
```

Lauchlin Mackinley

    v.                                    Civil No. 10-cv-306-JL
                                         Opinion No. 2011 DNH 086
Michael J. Astrue, Commissioner,
Social Security Administration

## MEMORANDUM ORDER

This is an appeal from the denial of plaintiff Lauchlin Mackinley's application for Social Security disability benefits. See 42 U.S.C. § 405(g). The administrative law judge ("ALJ") found that Mackinley, while severely impaired by the effects of a stroke and chronic obstructive pulmonary disease, see 20 C.F.R. § 404.1520(c), was not disabled because he had the residual functional capacity to perform light work, see id. § 404.1567(b), and was capable of making an adjustment from his previous heavy work to other jobs existing in the national economy, see id. §§ 404.1520(g). In making those findings, the ALJ rejected Mackinley's more severe description of his symptoms and functional limitations as "not fully credible," and also rejected the supporting assessment of his primary care physician, instead giving "controlling weight" to the assessment of a state agency physician who had not examined Mackinley.

Mackinley has moved for an order reversing the ALJ's decision, see L.R. 9.1(b)(1), arguing that it was not supported by substantial evidence. The Commissioner of the Social Security

Administration ("SSA") has cross-moved for an order affirming that decision, see L.R. 9.1(d), arguing the opposite.  This court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 405(g) (Social Security).  After reviewing the administrative record, the parties' joint statement of material facts, and their respective memoranda, this court grants Mackinley's motion, denies the Commissioner's motion, and remands the case for reconsideration in light of several factual errors by the ALJ.

## I.  Applicable legal standard

"Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Social Security, 211 F.3d 652, 655 (1st Cir. 2000) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)).  If the ALJ's factual findings were supported by "substantial evidence," they are "conclusive," even if the court disagrees with the ALJ, and even if other evidence supports a contrary conclusion.  42 U.S.C. § 405(g); see also, e.g., Nguyen, 172 F.3d at 35.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Becker v. Sec'y of Health & Human Servs., 895 F.2d 34, 36 (1st Cir. 1990) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

That standard is not, however, "merely [a] rubber stamp [of] the ALJ's decision." Scott v. Barnhart, 297 F.3d 589, 593 (7th Cir. 2002) (quotation omitted). If the ALJ's decision was based on "a legal or factual error," or otherwise unsupported by substantial evidence, then it must be reversed and remanded under section 405(g). Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)); see also, e.g., Johnson v. Astrue, 597 F.3d 409, 411 (1st Cir. 2009) (reversing and remanding ALJ's decision denying disability benefits where it was based, in part, on "a misreading of the record").

A five-step process is used to evaluate an application for Social Security disability benefits. See 20 C.F.R. § 404.1520(a)(4). The applicant bears the burden, through the first four steps, of proving that he is disabled, i.e., that (1) he is not engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment meets or equals a specific impairment listed in SSA regulations; and (4) the impairment prevents him from performing his previous relevant work. Id. At step five, the burden shifts to the Commissioner to prove that the applicant has the residual functional capacity to perform other jobs existing in significant numbers in the national economy. Id.; see also, e.g., Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

## II.   **Background**

Mackinley is a 55-year-old man with a high school education who lives in Nashua, New Hampshire.  For more than 30 years, he worked in a series of physically demanding jobs, including as a sheet metal worker, forklift operator, and warehouse laborer.  In 1998, he suffered a recurrent stroke.  After a period of recovery, including a lengthy hospitalization, he returned to work.  His physical condition improved over time, but the stroke left him with numbness and mild weakness on the right side of his body and the left side of his face, as well as problems with fatigue and balancing.  In addition to the stroke, Mackinley, a longtime smoker, suffers from chronic obstructive pulmonary disease ("COPD"), which causes shortness of breath after even modest physical exertion.  He also claims to suffer from carpal tunnel syndrome.

In 2004, Mackinley lost his job as a sheet metal worker because his employer was going out of business.  After that, he tried various other jobs, including as a landscaper and a warehouse laborer, but was unable to perform with sufficient speed and stamina.  He also completed two years of vocational rehabilitation training, becoming certified as a phlebotomist and medical assistant, but was unable to secure a job in that field because he had a criminal record (a marijuana charge from his twenties).  In 2007, still unemployed and living with his

parents, Mackinley applied for Social Security disability benefits, alleging that he became disabled in 2004 due to his stroke, COPD, and carpal tunnel syndrome.

Dr. Hugh Fairley, a state agency physician, reviewed Mackinley's medical records in 2007 and prepared an assessment of his residual functional capacity.  Dr. Fairley noted that Mackinley had some numbness, weakness, and fatigue from his stroke, and also suffered from COPD.  Nevertheless, Dr. Fairley concluded that Mackinley had the capacity to stand or walk for 6 hours in an 8-hour workday; to sit for 6 hours as well; to lift and carry 20 pounds occasionally and 10 pounds frequently; to climb stairs and ladders, balance, stoop, kneel, crouch, and crawl occasionally; and to perform fine manipulations with his fingers occasionally, albeit with some limitations.  Dr. Fairley noted that his conclusions were not significantly different from those of Mackinley's treating physicians.

In 2009, however, Mackinley's primary care physician, Donald Reape, made a different assessment of Mackinley's residual functional capacity.  Dr. Reape concluded that Mackinley could stand for only 90 minutes in an 8-hour workday, walk for only 30 minutes (with shortness of breath after 100 yards), and sit for only 2 hours, because his fatigue would require him to take extra breaks and lie down periodically, at irregular intervals.  Dr. Reape further concluded that, while Mackinley had the ability to

lift and carry 10 pounds, he could only do so occasionally (not frequently), and could not lift and carry 20 pounds at all, or balance, or climb ladders.  Due to those limitations, Dr. Reape deemed Mackinley incapable of full-time work.

Following that assessment, the ALJ held an evidentiary hearing at which Mackinley testified about his employment history, his efforts to find work, and his daily activities.  He explained that, while his condition had improved after his stroke, it "reached a certain point that it started to go downhill, and that's where it's been going ever since."  He acknowledged that he could still work part-time ("one or two days a week, I'm sure"), but testified that, after a few hours of work, he needs to lie down and rest because of fatigue, and that he cannot work on consecutive days.  He testified that he can still prepare his own meals, perform household chores (with frequent rests), drive his car (though his right hand and arm go numb "after the first couple of miles"), go shopping, go fishing, and go "low-effort canoeing" (downstream for about an hour), which is one of his hobbies.

The ALJ issued a decision denying Mackinley's disability claim in 2010.  While acknowledging that Mackinley was severely impaired by the effects of his stroke and COPD, see 20 C.F.R. §§ 404.1520(c), and that those "impairments could reasonably be expected to cause [his] alleged symptoms," the ALJ

found his testimony regarding the extent of his limitations "not fully credible."  The ALJ stressed that (A) Mackinley's treatment notes "do not discuss complaints of fatigue"; (B) his "daily activities, including household chores and canoeing," were "inconsistent" with his alleged limitations; and (C) he lost his job for reasons unrelated to his health and that he had "been to vocational rehabilitation and looked for work, which is inconsistent with a claim for disability."

The ALJ likewise rejected Dr. Reape's assessment that Mackinley could not work full-time, finding it "not supported by objective findings in his treatment notes" and "inconsistent with [Mackinley's] range of daily activities."  Instead, the ALJ gave "controlling weight" to Dr. Fairley's earlier assessment that Mackinley had the residual functional capacity to perform light work, see id. § 404.1567(b), albeit with limited use of his fingers for fine manipulations (and, the ALJ added, a need to avoid pulmonary irritants).  Relying on the testimony of a vocational expert, the ALJ concluded that Mackinley, while not capable of returning to his previous heavy work, could make an adjustment to other jobs existing in significant numbers in the national economy, see id. §§ 404.1520(g), including usher/ticket-taker, assembler, ball assembler, mail-folding machine operator, and inserter machine operator.

The SSA's Decision Review Board initially selected MacKinley's claim for further administrative review, but did not complete its review in a timely fashion, which resulted in the ALJ's decision becoming the final decision of the Commissioner. See id. §§ 405.415, 405.420(a)(2).

### III.  **Analysis**

The question before this court is whether the ALJ's decision was supported by substantial evidence.  See Part I, supra.  As explained below, the ALJ made a number of factual errors in evaluating both Mackinley's testimony and Dr. Reape's supporting assessment.  This court is "not able to conclude with confidence that the ALJ's decision would have been the same" without those errors.  Abdus-Sabur v. Callahan, No. 98-2242, 1999 WL 551133, at *4, 1999 U.S. App. LEXIS 17823, at *11 (1st Cir. July 27, 1999) (unpublished).  The ALJ's decision must therefore be reversed and remanded for further findings and/or proceedings consistent with this order.  See, e.g., Johnson, 597 F.3d at 411.  This court expresses no opinion on what the result of those findings and/or proceedings should be.  "It is not the province of this court-- but of the ALJ--to weigh the (corrected) facts against all other relevant facts."  LaBreque v. Astrue, 2011 DNH 014, 17 (McAuliffe, C.J.).

### A. *Complaints of fatigue*

One of the main reasons that the ALJ gave for rejecting Mackinley's testimony and Dr. Reape's supporting assessment was that his treatment notes "do not discuss complaints of fatigue" and that "I don't see where [fatigue] has been cited in [medical] visits as a problem." But this court's review of the treatment notes reveals that Mackinley complained repeatedly to Dr. Reape and others about fatigue, including in June and July 2007, November 2008, and May 2009. See Admin. R. at 275 ("whiteouts and fatigue"), 277 ("fatigue"), 327 ("Patient does complain of fatigue."), and 330. Indeed, even Dr. Fairley's assessment, which was based on a review of Mackinley's treatment notes, acknowledged that "[f]atigue . . . contribute[s]" to his functional limitations. Id. at 270.[1] So the ALJ's suggestion that Mackinley had not complained about fatigue during his medical visits was erroneous.

---

[1] Dr. Fairley's assessment occurred in 2007, so he did not have the opportunity to review the treatment notes from 2008 and 2009 that mentioned fatigue, or Dr. Reape's assessment in 2009 that Mackinley could not work full-time. Dr. Fairley stated that, as of that time, his conclusions were not significantly different from those of Mackinley's treating physicians, including Dr. Reape. That is no longer true. The ALJ did not address that issue in his decision, but should do so on remand. See, e.g., Johnson, 597 F.3d at 412 ("the amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert") (quotation omitted).

### B.  *Daily activities*

Another reason that the ALJ gave for rejecting Mackinley's testimony and Dr. Reape's supporting assessment was that Mackinley's "daily activities, including household chores and canoeing," were "inconsistent" with his alleged limitations.  But Mackinley testified that he could engage in those activities for only a short period of time (e.g., a morning of chores, an hour of canoeing), that he had to move at a slow pace with frequent breaks, and that he needed to lie down and rest afterward.  That testimony, if true, would be consistent with Mackinley's testimony--and Dr. Reape's assessment--that Mackinley could work part-time, but not full-time, because he needs frequent breaks and needs to lie down at irregular intervals.  Cf. Johnson, 597 F.3d at 414 ("such activities are not necessarily inconsistent" with limitation to part-time work).

The ALJ also stated, in describing Mackinley's daily activities, that he "swims a couple of times per week if possible."  But, as noted in the parties' joint statement of facts, see document no. 10, at 6, Mackinley actually testified that he sits on a deck and watches others swim, not that he swims himself.  There is obviously a huge difference between those two activities, in terms of assessing his functional capacity.  While the ALJ only mentioned swimming once, that factual error could have colored the ALJ's overall impression of Mackinley's daily

10

activities and, in turn, affected the weight given to Mackinley's testimony and Dr. Reape's assessment.

### C. *Efforts to find work*

Another reason that the ALJ gave for rejecting Mackinley's testimony was that he had "been to vocational rehabilitation and looked for work, which is inconsistent with a claim for disability" and also "inconsistent" with Mackinley's testimony that he was "unable to work." But, as the Commissioner acknowledges, see document no. 9-1, at 9 n.8, Mackinley never testified that he was "unable to work." To the contrary, he openly acknowledged that he could work part-time, but testified that he lacked sufficient speed and stamina to work full-time, including at the various jobs he tried. So his efforts to find work and develop new skills were not inconsistent with his testimony in that respect.

Moreover, as many courts have noted, there is no "logical incompatibility between working full time [much less seeking work] and being disabled from working full time." Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 918 (7th Cir. 2003); accord Seitz v. Metro. Life Ins. Co., 433 F.3d 647, 651 (8th Cir. 2006); Lasser v. Reliance Std. Life Ins. Co., 344 F.3d 381, 392 (3d Cir. 2003). Following his stroke, Mackinley "may have forced himself to continue in his job for

years despite severe . . . fatigue" and then, after being laid off and unsuccessfully trying to find other work, "finally have found it too much and given it up even though his condition had not worsened."  Hawkins, 326 F.3d at 918.

Arguably, Mackinley's efforts to find work and develop new skills, coupled with his acknowledgment that he could work part-time, would seem to bolster his credibility, not undermine it. See, e.g., 20 CFR § 416.929(a) (listing "efforts to work" as a relevant factor to consider in evaluating subjective disability claims); SSR 96-7P (same).  But it is the ALJ, not this court, that has "prime responsibility" for making that credibility determination on remand.  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  For now, it suffices to say that the ALJ's stark statement that Mackinley's "vocational rehabilitation and look[ing] for work . . . is inconsistent with a claim for disability" was erroneous.[2]

## IV.  Conclusion

Pursuant to sentence four of 42 U.S.C. § 405(g), Mackinley's motion to reverse the Commissioner's decision[3] is GRANTED.  The

---

[2]This is not to say that such a statement will always be grounds for reversal, or even that it would independently warrant reversal here.  But, in light of the ALJ's other factual errors and Mackinley's testimony, this court concludes that the ALJ's stark statement needs to be reconsidered.

[3]Document no. 7.

Commissioner's motion to affirm that decision[4] is DENIED. The case shall be remanded to the Commissioner for further findings and/or proceedings consistent with this order. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge
District of New Hampshire

Dated: May 31, 2011

cc: Raymond J. Kelly, Esq.
    Gretchen Leah Witt, Esq. (AUSA)

---

[4]Document no. 9.